UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| HEIDI HARRIS, | ) CASE NO. 1:09CV2368 |
| Plaintiff, | ) |
| | ) MAGISTRATE JUDGE |
| v. | ) GEORGE J. LIMBERT |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL | ) **MEMORANDUM OPINION** |
| SECURITY, | ) **AND ORDER** |
| | ) |
| Defendant. | ) |

Heidi Harris ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1.  For the following reasons, the Court AFFIRMS the Commissioner's decision:

## I.   PROCEDURAL AND FACTUAL HISTORY

On April 26, 2006, Plaintiff filed applications for DIB and SSI alleging disability beginning March 21, 2006 due to arthritis, wrist replacement and tendonitis.  Tr. at 87-93, 113.  Plaintiff's applications were denied initially and on reconsideration.  Tr. at 56-61.

Plaintiff filed a request for an administrative hearing and on December 5, 2008, an Administrative Law Judge ("ALJ") conducted an administrative hearing where Plaintiff was represented by counsel.  Tr. at 23, 69.  At the hearing, the ALJ heard testimony from Plaintiff and Thomas Neimburger, a vocational expert ("VE").  *Id*. at 23.  On March 30, 2009, the ALJ issued a Notice of Decision - Unfavorable.  *Id*. at 10-18.  Plaintiff filed a request for review, which the Appeals Council denied.  *Id*. at 1-5.

On October 13, 2009, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1.  On February 27, 2010, Plaintiff filed a brief on the merits.  ECF Dkt. #14.  On April 26, 2010, Defendant filed a brief on the merits.  ECF Dkt. #16.  Plaintiff did not file a reply.  *See* ECF Docket.  The parties consented to the jurisdiction of the undersigned on February 4, 2010.  ECF

Dkt. #13.

## II. SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

The ALJ found that Plaintiff had the following severe impairments: status post right first carpometacarpal joint liagamentous reconstruction and pendant interposition with palmaris longus autograft; radial scaphoid facet spurs; depression; and anxiety disorder, not otherwise specified. Tr. at 12. The ALJ determined that Plaintiff's impairments, individually or in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). *Id*. at 15. The ALJ specifically considered Listings 1.02, 12.04, and 12.06. *Id*. The ALJ next determined that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she could not perform handling or fingering with her right upper extremity or bi-manual tasks, but had no functional limitations with the non-dominant left upper extremity. *Id*. The ALJ elaborated: "In effect, the objects she could lift would have to be suitable in size and shape so that they could be lifted primarily with the non-dominant hand, using the dominant hand only to steady the object." *Id*. He further limited Plaintiff to simple, routine work tasks. *Id*.

The ALJ determined that Plaintiff could not perform her past relevant work as a bill collector because she lacked the bilateral manual dexterity necessary to perform that work. Tr. at 17. Based upon the VE's testimony at the hearing, however, the ALJ concluded that Plaintiff could perform significant numbers of other jobs in the national economy, including the jobs of receptionist, watch guard/security guard, and cafeteria cashier. *Id*. at 17-18. Consequently, the ALJ found that Plaintiff was not disabled. *Id.* at 18.

## III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV.    STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

### V. ANALYSIS

#### A. CREDIBILITY

Plaintiff first asserts that the ALJ erred in discounting her credibility when he failed to assess her complaints of pain, despite finding that her testimony was credible. ECF Dkt. #14 at 9. The Court finds no merit to this assertion.

The social security regulations establish a two-step process for evaluating pain. *See* 20 C.F.R. § 416.929, SSR 96-7p. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.; Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky v. Bowen*, 35 F.3d 1027, 1038-1039 (6th Cir. 1994); *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 853 (6th Cir. 1986). Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. *See id.* Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *See id.*

When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. *See* SSR 96-7p, 61 Fed. Reg. 34483, 34484-34485 (1990). These factors include: the claimant's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any pain medication; any treatment, other than medication, that the claimant receives or has received to relieve the pain; and the opinions and statements of the claimant's doctors. *Felisky*, 35 F.3d at 1039-40. Since the ALJ has the opportunity to observe the

claimant in person, a court reviewing the ALJ's conclusion about the claimant's credibility should accord great deference to that determination. *See Casey*, 987 F.2d at 1234. Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence. *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

Plaintiff begins her analysis by first citing to the Sixth Circuit's decision in *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984) for the well-established rule that pain alone may be disabling. ECF Dkt. #14 at 9. In *King*, the Sixth Circuit found that the claimant lacked the RFC for any substantial gainful activity due in part to the claimant's own testimony as to the severe pain that he suffered, but also because no conflicting medical evidence existed regarding his claim of pain and the claimant's testimony as to his sedentary lifestyle, which included lying down for up to 14 hours during the day. *King*, 742 F.2d at 975.

Here, the ALJ set forth the proper standards for evaluating Plaintiff's credibility. Tr. at 15. He cited to 20 C.F.R. §§ 404.1529 and 416.929 and SSRs 96-4p and 96-7p. *Id*. He also indicated that he considered the medical opinion evidence in accordance with the proper regulations and SSRs. *Id*. Based upon his review of Plaintiff's testimony, the applicable standards, and the opinion evidence, the ALJ found that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms of which she complained. *Id.* at 16.

The ALJ further found that Plaintiff's statements concerning the intensity, persistence and limitations due to her pain were generally credible. Tr. at 16. Plaintiff asserts that the fact that the ALJ found her testimony generally credible contradicts his failure to include any limitations resulting from her complaints of pain. ECF Dkt. #14 at 10. The Court rejects this assertion. First, the Court points out the the ALJ found Plaintiff's testimony "generally credible," not fully credible. Tr. at 16. Further, the ALJ did include limitations regarding Plaintiff's complaints of right wrist pain. In fact, in his credibility analysis, he indicated that his RFC accommodated Plaintiff's physical functional limitations to the extent they were supported by the medical evidence, giving Plaintiff every benefit of the doubt. *Id*. The ALJ provided limitations for Plaintiff's right wrist by restricting her to no handling or fingering with the right upper extremity, no bi-manual tasks, and the ability to lift only those objects that were "suitable in size or shape so that they could be lifted primarily with the non-

dominant hand, using the dominant hand only to steady the object." *Id*. at 15.

Moreover, the ALJ evaluated the appropriate factors in considering Plaintiff's complaints of pain. In reviewing her impairments, the ALJ discussed Plaintiff's daily activities, indicating her testimony that she wears a brace on her hand, she could not lift more than an empty glass with her right hand, she sleeps a lot, watches television, does not go out much, and takes more time to care for her personal needs and to clean the house because she has to do it with her non-dominant left hand. Tr. at 16. The ALJ also reviewed the medical evidence regarding Plaintiff's right wrist. Tr. at 12-14. He noted Plaintiff's visits to Dr. Hoyen, an orthopedic surgeon, who diagnosed her with a Madelung's deformity with pain at the distal radioulnar joint and pain at the thumb carpometacarpal joint. *Id*. at 12. The ALJ cited Plaintiff's April 3, 2006 surgery with Dr. Hoyen for right first carpometacarpal joint ligamentous reconstruction and pendant interposition with palmaris longus autograft. *Id*. at 13. He noted Plaintiff's occupational therapy thereafter of twice per week for five weeks, a home exercise program and splint fabrication. *Id.* The ALJ cited a report on June 6, 2006 that Plaintiff was taking medications, using heat to help with pain, and he quoted her statement that "I can definitely move it better." *Id*. He noted a subsequent right thumb surgery which helped to alleviate thumb pain but caused changes to Plaintiff's right wrist and hand, for which she received an updated splint. *Id*. at 13-14. The ALJ further discussed Plaintiff's therapies and medications, including physical therapy, the taking of Vicodin, the use of splints, and the use of steroid injections to relieve pain. *Id*. at 12-14.

The ALJ indicated that he gave substantial weight to the opinions of the state agency physicians and no treating physician had limited Plaintiff's work abilities beyond that determined by those physicians. Tr. at 16. Dr. Diane Manos, a state agency reviewing physician, had opined on July 31, 2006 that Plaintiff could perform light work despite her impairments, with a pushing and pulling limitation as to her upper extremities, only occasional handling and fingering with the right extremity, no crawling, and no climbing of ladders, ropes or scaffolds. *Id.* at 251-252. Dr. Manos supported her RFC with the medical evidence relating to Plaintiff's wrist impairments. *Id*. Dr. Hinzman reviewed the medical evidence on January 22, 2007 and affirmed Dr. Manos' findings, indicating that despite Plaintiff's complaints that her pain had worsened since her corrective thumb

surgery, the medical evidence showed that her overall limitations had not changed. *Id.* at 398.

Based upon his review of the appropriate factors for evaluating Plaintiff's complaints of pain, the ALJ reasonably determined that Plaintiff was not disabled from performing all types of work but rather was limited in her ability to use her right extremity. The ALJ limited Plaintiff to using her right hand only to steady objects that she could carry in her left hand. This limitation appears to be based upon Plaintiff's testimony regarding her pain and the limited use of the right wrist, since no treating physician had limited her and the agency physicians had not limited her to that degree.

For the foregoing reasons, Plaintiff's contention that the ALJ erred in assessing her credibility is not well-taken.

### B. RFC

Plaintiff also contends that the ALJ erred in finding that she could perform light work with a limitation to using her right hand only to steady objects that she could lift with her non-dominant, non-impaired left hand. ECF Dkt. #14 at 11. Plaintiff complains that the "ALJ improperly included within his assessment of the Plaintiff's residual functional capacity that the[sic] Ms. Harris retained the ability to 'post'– despite the record containing only contrary medical support." *Id.* Plaintiff asserts that Dr. Hoyen, Plaintiff's orthopedic specialist, opined on numerous occasions that Plaintiff was unable to use her dominant right hand to steady objects. *Id*. at 12. Plaintiff contends that the medical records, including those of the agency's reviewing physicians, also support this conclusion. *Id*. Plaintiff also mentions that the ALJ failed to identify the reasons "why he rejected Dr. Hoyen's[ ], as required by the treating physician rule, *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th .[sic] Cir. 2004)." ECF Dkt. #14 at 12. The Social Security regulations define medical opinions as "statement from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite your impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2); 416.927(a)(2). The Court questions whether either of the documents from Dr. Hoyen that Plaintiff relies upon is a "medical opinion" as defined by the regulations. They appear to be merely progress notes.

-7-

Nevertheless, the Court reviews the two documents. ECF Dkt. #14 at 12, citing Tr. at 278, 440. The first is a July 19, 2006 progress note indicating that Plaintiff had received a padded and remolded right wrist splint due to biomechanical alterations resulting from the thumb surgery. *Id.* at 277. Dr. Hoyen noted that Plaintiff could not return to work at typing and Plaintiff had worse pain upon activity. *Id.* He indicated that Plaintiff's case was a "very complex case considering the alteration of biomechanics." *Id*. at 278. He further noted that a corticoid steroid injection was warranted and that "[a]t present, this condition does represent a significant disability with functional limitation. She cannot perform bimanual tasks." *Id.* The second document is a July 14, 2008 progress note indicating that Plaintiff had wrist pain with motion and some pain with rest as well. *Id*. at 440. Plaintiff was given a corticosteroid injection at this appointment. *Id*. at 440-441.

When reviewing medical evidence in support of a claim for social security, an ALJ must give controlling weight to the opinion of a treating physician if the ALJ finds that the opinion on the nature and severity of an impairment is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 404.1527(d)(2); 416.927(d)(2). If an ALJ does not give controlling weight to the opinions of a treating physician, the ALJ must apply the factors in 20 C.F.R. § 404.527(d)(2)(i), (d)(2)(ii), (d)(3) through (d)(6) [20 C.F.R. § 416.927(d)(2)(i),(d)(2)(ii), (d)(3) through (d)(6) for SSI] which include the length of the treatment relationship, the frequency of the examinations, the nature and extent of the treatment relationship, the supportability of the opinions with medical signs, laboratory findings, and detailed explanations, consistency of the opinions with the record as a whole, the specialty of the treating physician, and other factors such as the physician's understanding of social security disability programs, and familiarity of the physician with other information in the claimant's case record. 20 C.F.R. § 404.1527(d)(2), 416.927(d)(2).

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so. SSR 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating

-8-

source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore " 'be bewildered when told by an administrative bureaucracy that [s]he is not, unless some reason for the agency's decision is supplied.' " *Wilson,* 378 F.3d at 544, quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2nd Cir.1999). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.

Here, the ALJ did not apply the treating physician rule to Dr. Hoyen's statement made in the July 19, 2006 progress note. Nevertheless, the ALJ's RFC mirrored Dr. Hoyen's July 19, 2006 opinion as to Plaintiff's wrist limitation since the ALJ included a restriction in his RFC that Plaintiff could not perform work requiring bimanual tasks. Tr. at 15, 319. In *Wilson v. Commissioner of Social Security*, 378 F.3d 541, the Sixth Circuit cited instances that may constitute harmless error not requiring reversal when an ALJ fails to observe the treating physician rule. One of the examples suggested is when the ALJ adopts the opinion of the treating source or makes findings consistent with the opinion. *Wilson*, 378 F.3d at 547. The Court finds that to be the situation in this case. The ALJ's RFC adopted Dr. Hoyen's opinion as to Plaintiff's lack of bimanual ability. Accordingly, the failure of the ALJ to apply the treating physician rule as to this opinion constitutes harmless error.

As to the ALJ's failure to apply the treating physician rule to Dr. Hoyen's July 14, 2008 progress note, there is no opinion from Dr. Hoyen in that progress note that Plaintiff was unable to use her right wrist for all activity. *Id*. at 440-441. He merely indicated that Plaintiff had wrist pain with motion and some pain with the wrist at rest. *Id*. at 440. Accordingly, there is no error by the ALJ in failing to evaluate such an opinion under the treating physician rule.

Plaintiff also asserts that she was unable to use her dominant right hand for any activity and generically states that "[t]he medical records as a whole, including the opinions of Social

Security reviewing physicians, support this conclusion." ECF Dkt. #14 at 12. Plaintiff fails to cite the Court to any of the medical records supporting her assertion, except for the two progress notes of Dr. Hoyen that were addressed above. And the state agency physicians actually limited Plaintiff less restrictively than did the ALJ. As explained above, Dr. Manos opined on July 31, 2006 that Plaintiff could perform light work, including normal lifting and carrying limitations, despite her impairments, with only a pushing and pulling limitation as to her upper extremities, occasional handling and fingering with the right extremity, no crawling, and no climbing of ladders, ropes or scaffolds. *Id.* at 251-252. Dr. Manos supported her RFC with the medical evidence relating to Plaintiff's wrist impairments. *Id*. Dr. Hinzman reviewed the medical evidence on January 22, 2007 and affirmed Dr. Manos' findings, indicating that despite Plaintiff's complaints that her pain had worsened since her corrective thumb surgery, the medical evidence showed that her overall limitations had not changed. *Id.* at 398. Neither of these physicians included the bimanual tasks restriction found by the ALJ, nor did they include the lifting restriction as to size and shape for the non-dominant hand so that the right hand could be used only to steady the object.

     Since the ALJ adopted Dr. Hoyen's limitation espoused in a progress note, and imposed greater restrictions than those found by the state agency physicians, the only other physicians to restrict Plaintiff, the Court finds no merit to Plaintiff's assertion. It must be remembered that the ultimate responsibility for determining a claimant's RFC rests with the ALJ and that determination is based upon the evaluation of the medical evidence and the claimant's testimony. 42 U.S.C. § 423(d)(5)(B); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). The ALJ here reviewed the medical evidence regarding Plaintiff's wrist impairment, noted that no physician had imposed greater restrictions than the agency physicians and credited Plaintiff's testimony to some extent by further limiting her ability to use her right hand more than that opined by the agency physicians. These findings constitute substantial evidence for the ALJ's RFC determination.

## C. VOCATIONAL EXPERT

Plaintiff also challenges the ALJ's Step Five findings that she could perform jobs existing in significant numbers in the national economy. She asserts that the ALJ erred in relying upon only some parts of the Vocational Expert's ("VE's") testimony that supported his conclusion that she was not disabled and disregarded those portions of the testimony that supported a finding that she was disabled. ECF Dkt. #14 at 13.

Substantial evidence supports the ALJ's finding that Plaintiff could perform jobs existing in significant numbers in the national economy. In presenting a hypothetical person to the VE, the ALJ asked the VE to assume an individual with Plaintiff's age, education and past relevant work, with a light work limitation with limitations, as he stated "for all intents and purposes, a one-armed individual and the upper extremity that's functional is the non-dominant." Tr. at 42. He went on to state that the lifting and carrying limitation "would be lifting objects that can be - - you know, that in terms of size and shape and so forth could be lifted with the one dominant - - non-dominant hand and then the right hand could be used, perhaps, to steady the object but the lifting and carrying would be primarily with the non-dominant hand." *Id.* The ALJ also set forth a limitation for no fingering or handling with the dominant hand and limitations to simple, routine tasks. *Id.*

Plaintiff first asserts that the ALJ ignored the VE's testimony that placing such a hypothetical person as identified by the ALJ would be "extremely difficult." Tr. at 44. The VE thereafter acknowledged that he was not allowed to speak as to employability or whether the number of jobs that he cited were a significant number as those were determinations made by the ALJ, but he could only speak as to the types of jobs that the hypothetical person could perform and the numbers of those jobs available in the economy. *Id*. at 44, 49. Nevertheless, the ALJ asked the VE to explain why he believed that sustainability or employability would be difficult for the hypothetical person that the ALJ described. *Id*. The VE explained that while a person who can use only the non-dominant extremity can work, it would be extremely difficult to place such a person. *Id*. at 43. He elaborated: "Can a one-armed person work in the national economy? Yes. The - - just a court of common knowledge would show that. Can they get

-11-

hired?  Usually not with these limitations." *Id*.

The VE then proceeded to identify the jobs available in the economy for the hypothetical person and the numbers of jobs available both locally and nationally.  He reduced the numbers of the jobs available by two-thirds because of the one-handedness of the hypothetical person, her ability to use only the non-dominant hand, and the diminished ability to post or steady objects with the dominant, primarily unusable, extremity.  Tr. at 47.  The VE presented the numbers of jobs available in the economy both locally and nationally and it was the ALJ's decision to determine whether the numbers of jobs presented constituted a significant number of jobs.

Employability is not a factor to consider in determining whether work exists in the national economy that a claimant could perform.  20 C.F.R. §§ 404.1566(a) and 416.966(a) provide:

> (a)  General. We consider that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country. It does not matter whether–
>
> (1) Work exists in the immediate area in which you live;
>
> (2) A specific job vacancy exists for you; or
>
> (3) **You would be hired if you applied for work**

20 C.F.R. §§ 404.1566(a), 416.966(a)(emphasis added).  Further, 20 C.F.R. §§ 404.1566(c) and 416.966(c) state:

> (c) Inability to obtain work.  We will determine that you are not disabled if your residual functional capacity and vocational abilities make it possible for you to do work which exists in the national economy, but you remain unemployed because of–
>
> (1) Your inability to get work;
>
> (2) Lack of work in your local area;
>
> (3) The hiring practices of employers;
>
> (4) Technological changes in the industry in which you have worked;
>
> (5) Cyclical economic conditions;
>
> (6) No job openings for you;
>
> (7) You would not actually be hired to do work you could otherwise do, or;

    (8) You do not wish to do a particular type of work.

20 C.F.R. §§ 404.1566(c), 416.966(c)(emphasis added). Moreover, "[t]here is no bright line boundary separating a 'significant number' from insignificant numbers of jobs." *Lenon v. Apfel*, 191 F.Supp.2d 968, 979 (W.D. Ten. 2001), citing *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir.1988). The Court determines what constitutes a significant number of jobs on a case-by-case basis. *Id*. In making such a determination, the following factors should be considered: "the level of claimant's disability; the reliability of the vocational expert's testimony; the reliability of the claimant's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work; and so on." *Id*.; *see also Born v. Secretary of Health and Human Servs*., 923 F.2d 1168, 1174 (6th Cir.1990)." The ALJ is not required to explicitly consider each factor as they are merely suggestions. *Lenon*, 191 F.Supp.2d at 979, citing *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir.1999). The "decision should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Hall,* 837 F.2d at 275.

  Substantial evidence supports the ALJ's determination that a significant number of jobs existed in the national economy that Plaintiff could perform. The VE identified jobs that a hypothetical person with Plaintiff's limitations could perform and he provided a thorough explanation for reducing the numbers of the jobs available by two-thirds. Despite the two-thirds reduction, he nevertheless found that the hypothetical person could perform the jobs of: front-desk receptionist, with 400 jobs available locally and 200,000 nationally; gate or watch guard, of which 350 jobs were available locally and 175,000 jobs nationally; and cafeteria cashier, of which 250 jobs existed locally and 170,000 jobs existed nationally. *Id*. Further, the VE testified that the geographic location for his local numbers was Northeast Ohio, which alleviates to some extent Plaintiff's limited ability to travel, since she is a resident of Cuyahoga County. Tr. at 46; ECF Dkt. #1. The Sixth Circuit has held that 700 jobs within a 75-mile radius and 700,000 jobs available nationally constituted a significant number of jobs. *Harmon*, 168 F.3d at 292.

  Considering the *Hall* factors, the Court finds that substantial evidence supports the ALJ's

determination that 1,000 jobs available in Northeast Ohio and 455,000 available nationally constituted a significant number of jobs available in the national economy.

## VI. CONCLUSION

For the foregoing reasons, the Court AFFIRMS the Commissioner's decision and DISMISSES the instant case in its entirety with prejudice.

DATE: November 19, 2010           */s/George J. Limbert*
GEORGE J. LIMBERT
UNITED STATES MAGISTRATE JUDGE